## STATE OF NEW YORK
## SUPREME COURT : COUNTY OF ERIE

TERRANCE CASH,

                Plaintiff,

vs.

COUNTY OF ERIE,

CHRISTINE GREEN, JASON PULEO,
KIMBERLY WILGUS, MARK FRANCZYK,
DERRICK NEELY, KEITH DUNLAP,
BRENDAN WHEELER, KATE WARRINGTON,
TIMOTHY GAWLAK, WILLIAM PAGE,
JUSTIN BAUER, SHAUN B. HEDIGER,
JONATHAN WIER, RYAN WALKER,
RICHEL DELORENZO, JOHN DiMARTINO,
JEROME STACHURA, SEAN MEIERER,
TAMARA BARNAS, "RICHARD ROE"
SHERIFF'S DEPUTIES 1-10 and other unidentified
members of the Erie County Sheriff's Office,

                Defendants.

> **ANSWER**
>
> **Index No. 806247/2025**

**TRIAL BY JURY DEMANDED**

      The Defendants, COUNTY OF ERIE, CHRISTINE GREEN, JASON PULEO,

KIMBERLY WILGUS, MARK FRANCZYK, DERRICK NEELY, KEITH DUNLAP,

BRENDAN WHEELER, KATE WARRINGTON, TIMOTHY GAWLAK, WILLIAM PAGE,

JUSTIN BAUER, SHAUN B. HEDIGER, JONATHAN WIER, RYAN WALKER, RICHEL

DELORENZO, JOHN DiMARTINO, JEROME STACHURA, SEAN MEIERER and

TAMARA BARNAS, by and through their attorney, JEREMY C. TOTH, ESQ., ERIE

COUNTY ATTORNEY, by ANTHONY B. TARGIA, ESQ., Assistant County Attorney, of

counsel, answer the Complaint herein as set forth below:

1.      Admit the allegations contained in paragraph(s) 2, 5, 7, 9, 11, and 12.

2.      Deny each and every allegation contained in paragraph(s) numbered 51, 56, 60, 61, 63, 64, 65, 66, 67, 69, 70, 72, 73, 74, 75, 76, 79, 80, 81, 82, 83, 84, 85, 87, 88, 90, 91, 92, 93, 94, 95, 96, 97, 98, 99, 100, 101, 102, 103, 104, 105, 106, 107, 108, 110 (including all sub-parts a-p), 111, 112, 113, 114, 115, 116, 117, 118, 119, 120, 121, 122, 123, 124, 125, 126, 127, 128, and 129 of the plaintiff's complaint.

3.      Deny knowledge or information sufficient to form a belief with regards to the allegations in paragraphs 1, 6, 10, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, 31, 40, 41, 42, 43, 44, 45, 46, 47, 48, 49, 50, 55, 57, 59, and 62 of the plaintiff's complaint.

4.      Neither admit nor deny the allegations contained within paragraphs numbered 3, 4, 8, 32, 33, 34, 35, 36, 37, 38, 39, 52, 53, 54, 58, 68, 71, 77, 78, 80, 86, 89, and 109 of the plaintiff's complaint in that same call for legal conclusions.  To the extent that these allegations do not call for legal conclusions, the answering defendants deny knowledge or information as to same.

5.      Deny knowledge or information as to any allegations not heretofore addressed.

<b>AS AND FOR A FIRST DEFENSE THE DEFENDANTS ALLEGE :</b>

6.      Upon information and belief, plaintiff's Complaint wholly fails to state a claim upon which relief may be granted.

<b>AS AND FOR A SECOND DEFENSE THE DEFENDANTS ALLEGE :</b>

7.      Plaintiff has failed to comply with the mandatory pre-suit requirements of New York State General Municipal Law as are applicable to any possible pendent State claims asserted in plaintiff's Complaint. Therefore, any pendent State claims asserted in plaintiff's Complaint must be dismissed.

2

**AS AND FOR A THIRD DEFENSE THE DEFENDANTS ALLEGE :**

8.     The plaintiff may not recover punitive damages or exemplary damages against the defendants herein.

**AS AND FOR A FOURTH DEFENSE THE DEFENDANTS ALLEGE :**

9.     The defendants are immune in the instant suit from any liability to plaintiff for damages, since the said defendants acted towards plaintiff in good faith and with an objectively reasonable belief that their actions were lawful and not in violation of any of plaintiff's clearly established constitutional rights. Consequently, plaintiff's claims must be dismissed.

**AS AND FOR A FIFTH DEFENSE THE DEFENDANTS ALLEGE :**

10.     Upon information and belief, plaintiff's causes of action in the Complaint are barred by the applicable Statutes of Limitation and/or applicable filing deadlines.

**AS AND FOR A SIXTH DEFENSE THE DEFENDANTS ALLEGE:**

11.     The injuries and/or damages alleged in plaintiff's Complaint were caused or were contributed to, in whole or in part, by the culpable conduct, want of care, and/or assumption of risk on the part of the plaintiff and without any negligence, fault, or want of care on the part of the defendants.

12.     Upon information and belief, Plaintiff refused to comply with orders issued by defendants during a search for contraband that was passed to him by mouth following a visit by his girlfriend. Plaintiff aggravated and escalated the subject occurrence through his continued refusal to comply with commands made by defendants. The search for contraband was urgent and necessary for the well-being and safety of the Plaintiff, given the potential for overdose and even death, given the possibility that the contraband contained fentanyl.

3

**AS AND FOR A SEVENTH DEFENSE THE DEFENDANTS ALLEGE:**

13.     Lack of personal jurisdiction and lack of service of process.

**AS AND FOR AN EIGHTH DEFENSE THE DEFENDANTS ALLEGE :**

14.     Upon information and belief, all or some of the Plaintiff's economic loss have been or

with reasonable certainty will be replaced or indemnified by collateral sources, and, to the full

extent of such replacement or indemnification, these answering defendants request and demand

that any judgment, award or verdict obtained by the Plaintiff be reduced accordingly, as provided

for by § 4545 of the New York Civil Practice Law and Rules.

**AS AND FOR A NINTH DEFENSE THE DEFENDANTS ALLEGE:**

15.     The Defendants cannot be held vicariously liable to the Plaintiff and that further,

there can be no respondeat superior liability in the context of a Title 42 U.S.C. § 1983 claim.

**AS AND FOR A TENTH DEFENSE THE DEFENDANTS ALLEGE:**

16.     The actions of the Defendants herein are shielded from liability due to qualified

immunity or otherwise constitute discretionary acts which render the Defendants immune from

liability to the Plaintiff under a theory of quasi-judicial immunity/governmental immunity.

**AS AND FOR AN ELEVENTH DEFENSE THE DEFENDANTS ALLEGE :**

17.     No special duty or special relationship existed as between the Plaintiff and the

defendants herein.  The "public duty" rule, sometimes alternatively referred to as the

"governmental function immunity" doctrine, constitutes a complete bar to the Plaintiff's action

as against the Defendants.

**AS AND FOR A TWELFTH DEFENSE THE DEFENDANTS ALLEGE :**

18.     The Plaintiff has failed to mitigate damages herein.

4

19.     The Defendants herein at all times exercised the fullest restraint possible with regard
to any allegation concerning the use of excessive force.  Upon information and belief, Plaintiff
was non-compliant and refused to comply with orders issued by corrections officers.

### AS AND FOR A THIRTEENTH DEFENSE THE DEFENDANTS ALLEGE:

20.     The level of force used to search Plaintiff was justified in light of the potential
dangers involved with ingesting narcotic contraband.

### AS AND FOR A FOURTEENTH DEFENSE THE DEFENDANTS ALLEGE:

21.     The Plaintiff does not satisfy the necessary 4th, 8th or 14th Amendment legal analysis
required to present a valid claim.

### AS AND FOR A FIFTEENTH DEFENSE THE DEFENDANTS ALLEGE :

22.     The Plaintiff at all times received proper and adequate medical treatment and
services.

### AS AND FOR A SIXTEENTH DEFENSE THE DEFENDANTS ALLEGE :

23.     The COUNTY OF ERIE and Defendant Green do not create or execute policy
relative to the duties of the Erie County Correctional Officers at the Erie County Correctional
Facility or anything with regard to the operations of the Erie County Correctional Facility.

### AS AND FOR A SEVENTEENTH DEFENSE THE DEFENDANTS ALLEGE:

24.     There is no vicarious liability between the COUNTY OF ERIE and the Corrections
Officers of the Erie County Correctional Facility. Further, there is no vicarious liability between
the Corrections Officers employed by the Sheriff and either the Sheriff of Erie County or the
COUNTY OF ERIE.

5

**AS AND FOR An EIGHTEENTH DEFENSE THE DEFENDANTS ALLEGE:**

25.     Claims against an individual in their "official capacity" are void in the context of

Title 42 U.S.C. § 1983.  In addition, claims of negligence are also void in the context of a 42

USC § 1983 claim.

**AS AND FOR A NINETEENTH DEFENSE THE DEFENDANTS ALLEGE:**

26.     No Defendant possessed actual knowledge that any fellow officer was using

excessive force, or had a realistic opportunity to intervene and prevent the harm from occurring.

**AS AND FOR A TWENTIETH DEFENSE THE DEFENDANTS ALLEGE:**

27.     The actions taken to recover concealed contraband from the Plaintiff were lawful,

made with probable cause and thereby preclude any claim for assault and battery.

**AS AND FOR A TWENTY-FIRST DEFENSE THE DEFENDANTS ALLEGE:**

28.     There is a complete defense due to Justification.

**AS AND FOR A TWENTY-SECOND DEFENSE THE DEFENDANTS ALLEGE:**

29.     There is a complete defense due to Qualified Immunity.

**AS AND FOR A TWENTY-THIRD DEFENSE THE DEFENDANTS ALLEGE:**

30.     There is a complete defense due to Probable Cause.

**AS AND FOR A TWENTY-FOURTH DEFENSE THE DEFENDANTS ALLEGE:**

31.     There is a complete defense due to Good Faith.

**AS AND FOR A TWENTY-FIFTH DEFENSE THE DEFENDANTS ALLEGE:**

32.     There is a complete defense due to Lack of Intent.

**AS AND FOR A TWENTY-SIXTH DEFENSE THE DEFENDANTS ALLEGE:**

33.     There is a complete defense due to no knowledge of excessive force.

6

## AS AND FOR A TWENTY-SEVENTH DEFENSE THE DEFENDANTS ALLEGE:

34.     There is a complete defense due to there being no policy or custom.

## AS AND FOR A TWENTY-EIGHTH DEFENSE THE DEFENDANTS ALLEGE:

35.     There is a complete defense due to the incident of January 9, 2024 being an isolated incident.

## AS AND FOR A TWENTY-NINTH DEFENSE THE DEFENDANTS ALLEGE:

36.     There is a complete defense due to release. The operative release along with the underlying petition document request is attached as **Exhibit A**.

## AS AND FOR A THIRTIETH DEFENSE THE DEFENDANTS ALLEGE:

37.     There is a complete defense because the Erie County Sheriff's Office is a non-jural entity.

## JURY DEMAND

A trial by jury is hereby demanded.

**WHEREFORE**, the answering defendants request that:

(A)     Each count, claim, and cause of action in plaintiff's Complaint be dismissed; and for

(B)     Such other and further relief as this Court deems just and proper under the circumstances.

DATED:     May 21, 2025
           Buffalo, New York

Yours, etc.

JEREMY C. TOTH, ESQ.
Erie County Attorney and Attorney for
Answering Defendants.

By: ANTHONY B. TARGIA, ESQ.
Assistant County Attorney, of Counsel
95 Franklin Street, Suite 1634

7

Buffalo, New York, 14202
(716) 858-2208

TO:   ROTH & ROTH, LLP
Elliot Dolby Shields, Esq.
Attorneys for Plaintiff
192 Lexington Avenue, Suite 802
New York, New York 10024
(212) 425-1020
eshields@rothandrothlaw.com

# EXHIBIT A

## GENERAL RELEASE AND SETTLEMENT OF CLAIM

For the sole consideration of Three Thousand and 00/100 Dollars ($3,000.00) ROTH &

ROTH, LLP, the attorneys for petitioners, Terrance Cash and Roth and Roth, LLP, hereby release

and forever discharge the respondent, ERIE COUNTY SHERIFF'S OFFICE, its officials, agents,

servants, employees, representatives, and assigns, from any and all claims and demands, rights and

causes of action of any kind the undersigned now has or hereafter may have on account of or in

any way relative to the Petition filed in New York State, Supreme Court, Erie County, under index

no. 809867/2024 concerning petitioners' January 24, 2024 FOIL request and respondent's

response thereto. This release expresses a full and complete SETTLEMENT of the aforementioned

petition, regardless of the adequacy of the above consideration, and the acceptance of this release

shall not operate as an admission of fault on the part of anyone nor as an estoppel, waiver, or bar

with respect to any claim the party or parties released may have against the undersigned.

Dated: December 6, 2024

*Elliot Shields*
_____
ELLIOT SHIELDS
ROTH & ROTH, LLP

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF ERIE

TERRANCE CASH and ROTH AND ROTH, LLP,

                        Petitioners,

    -against-

ERIE COUNTY SHERIFF'S OFFICE,

                     Respondent,

For a Judgment Pursuant to Article 78 of the Civil
Practice Law and Rules.

INDEX NO.: 809867/2024

**NOTICE OF PETITION**

      **PLEASE TAKE NOTICE** that upon the annexed verified petition of Elliot D.

Shields, on behalf of Petitioners Terrance Cash and Roth & Roth, LLP, verified on July

11, 2024, and all exhibits annexed thereto, an application will be made to this Court at the

courthouse located at 25 Delaware Ave, Buffalo, NY 14202, on August 20, 2024, at

10:30 a.m. or as soon thereafter as counsel can be heard, for an Order and Judgment

pursuant to Article 78 of the New York Civil Practice Law and Rules for an Order:

1. Requiring Respondents to provide Petitioner with a copy of all
   documents requested in its January 24, 2024 FOIL request that do not
   fall within any of the exemption of Pub. Officer's Law §87;

2. Awarding attorney's fees and costs in favor of Petitioner against
   Respondent in an amount to be determined at the conclusion of this
   proceeding, pursuant to POL § 89(4)(c); and

3. Granting Petitioner such other and further relief as this Court may deem just and proper.

**PLEASE TAKE FURTHER NOTICE** that Petitioners intend to serve reply papers in this matter, and so pursuant to CPLR §§ 2214 and 7804(c), any answer and supporting affidavits shall be served and filed at least seven days before the return date of this application and any adjourned date.

Dated: July 11, 2024
New York, New York

Yours, etc., ...

ROTH & ROTH, LLP

~//s//~
_____
By: Elliot D. Shields
Attorneys for Petitioners
192 Lexington Avenue, Suite 802
New York, New York 10016
(212) 425-1020

TO:    Erie County Sheriff's Office, 10 Delaware Avenue, Buffalo, New York, 14202

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF ERIE

TERRANCE CASH and ROTH AND ROTH, LLP,

                              Petitioners,

        -against-

ERIE COUNTY SHERIFF'S OFFICE,


                              Respondent,


For a Judgment Pursuant to Article 78 of the Civil
Practice Law and Rules.

**INDEX NO.:** 809867/2024


**VERIFIED PETITION**


Petitioner, Terrance Cash and Roth and Roth LLP., for his Petition under Article 78 of the
Civil Practice Law and Rules ("CPLR") respectfully alleges as follows:

**PRELIMINARY STATEMENT**

1.      This proceeding is brought under Article 78 of the New York Civil Practice Law
and Rules ("CPLR") to vindicate the rights of the public and the Petitioners, Terrance Cash ("Mr.
Cash") and Roth and Roth, LLP, for video footage recorded by the Erie County Sheriff's Office's
surveillance cameras and Body-Worn Cameras ("BWC"), and for other records, and to require the
Respondent to comply with the New York Freedom of Information Law ("FOIL"), Public Officers
Law §§ 84 *et seq.*

2.      In short, Respondent unlawfully denied Petitioners' FOIL request by demanding an
unlawful prepayment of $207.50 prior to producing the requested video footage and other records.
(See **Exhibit "E"**). As explained herein, all of these charges, except the $18 charge for the cost of

the thumb drive, are impermissible under FOIL. Moreover, Respondent has not even attempted to justify any of the charges.

3.      Petitioners requested all video recordings, including Body Worn Camera recordings, surveillance videos, and any other videos, of the incident on January 9, 2024, wherein Mr. Cash was allegedly injured by several Erie County Sherriff Deputies, including sustaining several broken teeth. Petitioners also requested all paperwork mentioning or describing said recordings, all paperwork of Mr. Cash's transfer between cells, and all incident reports and other paperwork documenting force used against Mr. Cash. **(Exhibit "A").**

4.      Respondent denied Petitioners' FOIL Request, claiming an exemption under §87(2)(e)(i) of the Public Officers Law. **(Exhibit "B").**

5.      Petitioners appealed (**Exhibit C**), and Respondent's FOIL Appeals Officer reversed their position and directed the Records Officer to provide the responsive records. **(Exhibit D)**

6.      Instead of providing the records, however, Respondent sent Petitioner Roth & Roth, LLP an invoice for $207.50 and demanded payment prior to producing the records. **(Exhibit E)**. None of the charges in the invoice are permissible under FOIL, except for the $18 charge for the thumb drive. (See **Exhibit E**). No copying charges are permissible, because the records should be provided electronically by email or placed on the thumb drive with the BWC footage. More importantly, however, it is clearly established in the Fourth Department that an agency may not charge an "hourly rate" to "prepare" a response to a FOIL request under these circumstances (i.e., preparation of documents and BWC footage to send to a requestor, or to apply redactions to a document or video). (**Exhibit I**, *Forsyth v. City of Rochester et al.*, 185 A.D.3d 1499 [4 Dept 2020] [the "first appeal", which held that "respondents may not charge petitioner a fee for the costs associated with their review or redaction of the BWC footage requested by petitioner"]; **Exhibit J**, *Forsyth v. City of Rochester*, 207 A.D.3d 1236, 2022 WL 2578339 (4 Dept July 8,

2

Case 1:25-cv-00441-MAV    Document 1-2    Filed 05/22/25    Page 15 of 70

2022) (the "second appeal", which held that the City of Rochester unreasonably denied Petitioner's FOIL request in the first instance and affirming his entitlement to costs and attorney's fees])

7.      FOIL does not permit public records to be withheld absent a full explanation of the materials that are exempt from disclosure.

8.      FOIL also does not permit agencies to levy any charge for review and redaction of records, or to "prepare" routine records for release to the requestor.

9.      As a result, Respondent's demand that Mr. Cash remit payment in the amount of $207.50 as a precondition to producing the requested records violates FOIL.

10.     Indeed, Respondent's response to Mr. Cash's request for footage runs counter to both the public policy underlying FOIL and the purported goals of the BWC program of fostering transparency and improving police-community relations.

11.     FOIL is based upon the legislature's stated policy that "government is the public's business and that the public, individually and collectively and represented by a free press, should have access to the records of government," unless the agency establishes that the records fall squarely within one of the statute's exemptions. (Public Officers Law § 84).

12.     It is well settled that blanket nondisclosure of records is "inimical to FOIL's policy of open government," (*Gould* v. *N.Y. City Police Dep't,* 89 N.Y.2d 267, 275 [1996]), and that an agency may not deny access to records without first reviewing them and stating a "particularized and specific justification for denying access." (*Matter of Capital Newspapers Div, of Hearst Corp.* v *Burns,* 67 NY2d 562, 566 [1986]).

13.     Respondent's "prepayment policy" of charging requestors to "prepare" routine responses to FOIL requests is prohibited by clear Fourth Department precedent. (**Exhibit I,** *Forsyth v. City of Rochester et al.,* 185 A.D.3d 1499 [4 Dept 2020] [the "first appeal", which held that

3

"respondents may not charge petitioner a fee for the costs associated with their review or redaction of the BWC footage requested by petitioner"]; **Exhibit J**, *Forsyth v. City of Rochester*, 207 A.D.3d 1236 [4 Dept July 8, 2022] [the "second appeal", which held that the City of Rochester unreasonably denied Petitioner's FOIL request in the first instance and affirming his entitlement to costs and attorney's fees])

14.    Moreover, the policy effectively limits the public's access to government records by imposing an unlawful financial burden, which deters the public from submitting FOIL requests in the first instance and from pursuing FOIL requests once Respondent demands a prepayment.

15.    Having exhausted his administrative remedies, Mr. Cash petitions the Court to order the Erie County Sheriff's Office to comply with their obligations under FOIL by proving Mr. Cash with the requested BWC footage and other records, without charging any prepayment fees.

16.    Moreover, Petitioners respectfully submit that they are entitled to costs and reasonable attorneys' fees as a result of Respondent's unreasonable denial of his FOIL request—since Respondent did not produce any records in response to Petitioners' FOIL request, and it is clearly established that they are not permitted to charge a "prepayment" before producing records in response to a FOIL request.

17.    For these reasons and for the reasons more fully explained below, Petitioners respectfully submit that this Court should grant the within petition in its entirety.

## **EXHIBITS**

18.    The Petitioners will rely upon the following exhibits in support of the within application:

a.    Exhibit A......Petitioners' January 24, 2024 FOIL request;

b.    Exhibit B......Respondent's February 2, 2024 denial of Petitioners' FOIL request;

c.    Exhibit C....... Petitioners' February 19, 2024 appeal of Respondent's denial of the FOIL request;

    d.   Exhibit D ...... Respondent's March 12, 2024 response granting Petitioners' appeal of the denial of the FOIL request.

    e.   Exhibit E......Respondent's March 27, 2024 invoice requesting $207.50 for the preparation of the request

    f.   Exhibit F......April 16, 2024 article entitled, WBLK, | https://wblk.com/erie-county-sheriff-body-cam/?utm_source=tsmclip&utm_medium=referral

    g.   Exhibit G......February 28, 2024 WIVBTV video link wherein Erie County Sheriff John Garcia discusses body camera's in holding centers: https://www.youtube.com/watch?v=TCu1bb8FBlY

    h.   Exhibit H......February 29, 2024 Spectrum News 1 article outlining the decision to bring more Body Warn Camera's to Erie County Holding Centers, available at the following link: https://spectrumlocalnews.com/nys/buffalo/news/2024/02/29/body-cameras-coming-to-erie-county-holding-centers

    i.   *Forsyth v. City of Rochester et al.,* 185 A.D.3d 1499 [4 Dept 2020] [the "first appeal", which held that "respondents may not charge petitioner a fee for the costs associated with their review or redaction of the BWC footage requested by petitioner"];

    j.   *Forsyth v. City of Rochester,* 207 A.D.3d 1236, 2022 WL 2578339 (4 Dept July 8, 2022) (the "second appeal", which held that the City of Rochester unreasonably denied Petitioner's FOIL request in the first instance and affirming his entitlement to costs and attorney's fees])

### **RELIEF SOUGHT**

19.   Petitioners bring this proceeding pursuant to Article 78 of the CPLR requesting an Order:

    a.   Requiring Respondent to provide Petitioners with complete, unredacted copies of the records requested in the January 24, 2024 FOIL request, which do not

5

fall within any of the exemptions to disclosure under FOIL, in their original file format;

   b.  Requiring Respondent to pay Petitioners' attorneys' fees and costs in an amount to be determined at the conclusion of this proceeding, pursuant to POL § 89(4)(c); and

   c.  Such other and further relief as this Court may deem just and proper.

## PARTIES

20.    Petitioner, Terrance Cash, is an individual who resides in the County of Erie and State of New York.

21.    Petitioner, Roth & Roth, LLP., is a law firm located at 192 Lexington Avenue, Suite 802, New York, NY 10016.

22.    Respondent, the Erie County Sheriff's Office, is an agency located at 10 Delaware Avenue, Buffalo, New York, 14202.

23.    Respondent is an "Agency" as defined under Public Officers Law § 86, subject to the requirements of the Freedom of Information Law, New York Public Officers Law § 84 *et seq.*.

## JURISDICTION AND VENUE

24.    Jurisdiction is conferred on this Court by Judiciary Law § 140-b and Rule 7801 of the CPLR.

25.    This Petition has been timely filed, pursuant to Rule 217(1) of the CPLR, after Petitioners' receipt of the Respondent's final determination following exhaustion of the agency's appeals processes.

26.    The Erie County Sheriff's Office has control over their own records and are in possession of the information to which to Petitioners seek access.

6

27.     Upon information and belief, the determination regarding the appeal complained of
occurred in Erie County at Respondent's Administrative Offices,10 Delaware Avenue, Buffalo,
New York, 14202. Venue is proper in Erie County pursuant to Rules 7804(a) and 506(b) of the
CPLR.

### FACTUAL AND PROCEDURAL HISTORY

28.     By way of background, on January 9, 2024, Terrance Cash was injured by several Erie
County Sherriff's Deputies inside of the Erie County Correctional Facility. Mr. Cash sustained
serious injures, including broken teeth, as a result of force used against him by Sheriff's Deputies.

29.     On January 24, 2024 Petitioners served a FOIL request for video recording, paperwork,
and incident reports related to the aforementioned incident **(Exhibit "A")**.

30.     The requested BWC footage depicts a sheriff's deputy conducting official police activity.
(See **Exhibit "G,"** wherein Erie County Sheriff John Garcia describes the new increased BWC
footage initiative in holding centers as being "about transparency, […] about that trust that the
public has in law enforcement, […] about accountability […] to investigate complaints that are
justified or unjustified." (:30– 1:05); see also **Exhibit "H,"** wherein Garcia states that "this is
another investigative tool that's going to allow us to, you know, have that transparency."). By
demanding a fee for the "production" of the BWC and records in question, Respondent takes a
prohibitively limiting stance and goes against the intention of FOIL.

31.     To date, Respondent have failed to produce any of the requested records.

32.     Respondent has failed to justify its failure to produce the requested records by citing to any
specific exemptions from disclosure under FOIL following the March 12, 2024 appeal
determination.

7

33.    Respondent reviewed and denied Petitioners' FOIL request on February 9, 2024, stating that the records sought currently interfered with a law investigation and judicial proceeding pursuant to 87(2)(e)(i) of the Public Officers Law **(Exhibit "B")**.

34.    On February 19, 2024, Petitioners appealed the denial of their FOIL request, stating that the County could not meet its burden to demonstrate that the disclosure of records would interfere with ongoing judicial proceedings **(Exhibit "C")**.

35.    On March 12, 2024, Respondent granted Petitioners' appeal, stating that "there is no litigations, Criminal, Civil, or otherwise, which by the release of the requested information would interfere with law enforcement investigations or judicial proceedings. **(Exhibit "D")**.

36.    Respondent's appeal determination did not mention the possibility that Respondent would condition release of the requested records on Petitioners providing an hourly rate to allegedly cover the employee time required to "prepare" responsive records before providing them. Nor does Respondent elaborate the nature of preparation in this case (*Id.*).

37.    On March 27, 2024, Respondent provided an invoice requesting $30 for "police incident reports," $18 for "1 thumb drive with body camera footage," $9.50 for "other documentation," and $150 for the "hourly rate to *prepare* request." Again, Respondent fails to elaborate on what they mean by "preparation" **(Exhibit "E")**.

38.    The failure to produce the videos and instead to demand a prepayment constituted a denial of the FOIL request and appeal. (See **Exhibit "J"**, *Forsyth v City of Rochester*, 207 AD3d 1236, 1238-39 [4th Dept 2022] ["Then, on administrative appeal, respondents refused petitioner's request to release all of the video and instead conditioned the release of a less redacted video with audio on prepayment of nearly $300. Those actions constituted a blanket denial of petitioner's request."])

8

39.     In its March 12, 2024 appeal determination and March 27, 2024 invoice, Respondent did not claim that any portion of the requested records were exempt from disclosure pursuant to any specific statutory exemption. Thus, it is unclear what Respondent intends to "prepare" in this case.

40.     The only proper expense is the $18 for the thumb drive. The other expenses are improper and go against the intention of FOIL **(Exhibit "D" and Exhibit "E").**

41.     In its March 12, 2024 appeal determination and March 27, 2024 invoice, Respondent failed to cite any legal authority that would permit it to redact any portion the records requested by Petitioners in their FOIL request instead of producing the records in their original, unredacted format. (*Id.*).

42.     In its March 12, 2024 appeal determination and March 27, 2024 invoice, Respondent failed to cite any applicable statute or legal authority that would permit it to charge a prepayment prior to providing the requested BWC records in the first instance, or to apply redactions to the other responsive records. In the invoice they cite Public Officer's Law §87(b)(i) and state that "in determining the actual cost of reproducing a record, an agency may include an agency amount equal to the lowest paid agency employee who has the necessary skill required to prepare a copy." However, Petitioners are seeking records in an existing form that have regularly been provided in the past, and thus they require no "preparation" as that term is defined under the FOIL statute. (*Id.*).

43.     After receipt of the invoice, Your Undersigned called the telephone number for on the invoice for the Professional Standards Division of the Erie County Sheriff's Office and left three voicemails requesting a call back to discuss the charges in the invoice; however, their office never called me back.

9

44.    If by "prepare," Respondent means to charge for any necessary redactions—which they do not claim—Respondent's invoice goes against the intention of FOIL. See **Exhibits "I" and "J,"** wherein the Fourth Department agreed with Petitioner Roth and Roth, LLP that the City of Rochester could not charge a fee to apply redactions to BWC videos, or otherwise to "prepare" the videos for production in response to a FOIL request. Specifically, in that case, the court stated that "we agreed with petitioner that respondents may not charge petitioner a fee for the costs associated with their review or redaction of the BWC footage requested by petitioner" (Exhibit "I", *Matter of Forsyth v. City of Rochester, 185* AD3d 1499, 1500 [4 Dept 2020]).

45.    Notably, because Respondent failed to cite to any specific exemptions under the Freedom of Information Law to justify the invoice request for Petitioners' FOIL request, the instant petition does not address this issue. However, should Respondent raise any arguments in their opposition to the instant motion regarding specific FOIL exemptions, Petitioners reserve the right to raise any and all arguments as to why none of the specific statutory exemptions apply to the BWC footage or other records requested in by Petitioner.

46.    Petitioners are entitled to attorneys' fees and costs because (1) Respondent must produce records in response to Petitioners FOIL request, which they have not yet done, and so Petitioners should substantially prevail in this proceeding; (2) because Respondent's request for funds before providing responsive records sought in the FOIL request was unreasonable (3) because Respondent's demand for a payment as a condition to release the requested BWC footage and records was unreasonable as it lacked any legal basis

## RELEVANT LEGAL STANDARD

47.    It is settled law that a court reviewing an agency's failure to disclose requested records owes no deference to the agency's decision, but must "presume that all records of a public agency

10

are open to public inspection ... and must require the agency to bear the burden of showing that the records fall squarely within an exemption to disclosure." (*New York Committee for Occupational Health & Safety* v *Bloomberg,* 72 AD3d 153, 158 [1st Dept 2010]; *see also* POL §§ 89 (4)(b), (5)(e); *Matter of Markowitz v. Serio,* 11 NY3d 43, 50-51 [2008]; *Matter of Capital Newspapers Div. of Hearst Corp.* v. *Burns,* 67 NY2d 562, 566 [1986]). Courts do not give deference to an agency's claim that they may withhold records requested pursuant to FOIL.

48.     Accordingly, Respondent bears the burden of showing that all the requested records fall squarely within one of the categories of exemptions under Section 87(2) of the Public Officers' Law. (*Buffalo News* v. *Buffalo Enter. Dev. Corp.,* 84 N.Y.2d 488, 492 [1994], *quoting Matter of Russo* v. *Nassau County Community Coll.,* 81 N.Y.2d 690, 697 [1993]; *Matter of Newsday* v. *Empire State Dev. Corp.,* 98 N.Y.2d 359, 362 [2002] *quoting Matter of Fink v. Lefkowitz* 47 N.Y.2d 567, 571 [1979]; *Bahnken* v. *New York City Fire Dept.,* 17 A.D.3d 228, 229 [1st Dept, 2005] [Holding that in an Article 78 proceeding seeking public access under the FOIL, the arbitrary and capricious standard of Article 78 proceedings did not apply; instead, the municipality bears the burden to prove that the documents are exempt from disclosure]). Such a showing must be made by "articulating a particularized and specific justification for denying access." (*Matter of Capital Newspapers Div, of Hearst Corp.* v *Burns,* 67 NY2d 562, 566 [1986]; *see also Matter of New York State Pistol & Rifle Assn.* v *Kelly,* 55 AD3d 222, 225 [1st Dept 2008]).

49.     The reason State agencies are required to meet such an exacting, particularized, fact-specific showing to justify withholding government records under one of the Section 87(2) exemptions is because FOIL implements the legislative declaration that "government is the public's business." (POL § 84). Specifically, agencies must "articulate a particularized and specific justification" when they deny a record request pursuant to one of the eight specific categories of

statutory exemptions. The Court of Appeals explained the broad public policy underlying FOIL in

*Matter of Capital Newspapers* v. *Burns*:

> The Freedom of Information Law expresses this State's strong commitment to open government and public accountability and imposes a broad standard of disclosure upon the State and its agencies. The statute, enacted in furtherance of the public's vested and inherent "right to know," affords all citizens the means to obtain information concerning the day-to-day functioning of State and local government thus providing the electorate with sufficient information to 'make intelligent, informed choices with respect to both the direction and scope of governmental activities' and with an effective tool for exposing waste, negligence and abuse on the part of government officers.

(67 N.Y.2d 562, 565-66 [1986] [citations omitted]). Further, "the status or need of the person

seeking access is generally of no consequence in construing FOIL and its exemptions." (*Matter of*

*Capital Newspapers,* 67 N.Y.2d at 567).

50.     Thus, the Court of Appeals' clear instruction in *Fink* is that an agency meets its statutory

burden only when it "convincingly demonstrates" that an exemption applies. (*Fink*, 47 N.Y.2d at

571). This requires an agency to give "a particularized and specific justification for denying

access." (*Matter of Capital Newspapers Div. of Hearst Corp.* v. *Burns*, 67 N.Y.2d 562, 566 [1986];

see also, *Matter of Konigsberg* v. *Coughlin*, 68 N.Y.2d 245, 251 [1986]; *M. Farbman & Sons* v.

*New York City Health and Hospitals Corp.*, 62 N.Y.2d 75, 80 [1984]).

51.     A justification is not sufficiently particularized if it simply provides "conclusory

characterizations of the records sought to be withheld." (*Church of Scientology of N.Y.* v. *State of*

*New York*, 46 N.Y.2d 906, 908 [1979]). Rather, an agency must convincingly justify nondisclosure

"in more than just a 'plausible fashion.'" (*Matter of Data Tree, LLC* v. *Romaine*, 9 N.Y.3d 454,

462 [2007]).

12

52.     As explained below, Respondent's policy of demanding payment prior to providing the BWC recordings and other records is blatantly unlawful and directly contravenes FOIL's policy of open government.

## ARGUMENT
### POINT I

**RESPONDENT MAY NOT CHARGE A FEE TO REDACT RECORDS OR RETRIEVE EXISTING RECORDS, OR OTHERWISE "PREPARE" A ROUTINE RESPONSE TO A FOIL REQUEST**

53.     Respondent's policy of refusing to provide the Body Worn Camera recordings or other records unless and until the requester pays large fee to purportedly "prepare" the request unduly inhibits public access to government records and clearly violates the Freedom of Information Law.

54.     Respondent's demanded charges demonstrate a fundamental misunderstanding of the Freedom of Information Law, and the 2008 amendments to the law.

55.     The Legislature has declared that "government is the public's business and that the public, individually and collectively and represented by a free press, should have access to the records of government in accordance with the provisions of this article" (Public Officers Law § 84).

56.     The term "[r]ecord" is defined to mean "any information kept, held, filed, produced or reproduced by, with or for an agency ... in any physical form whatsoever ... [including] papers [and] computer tapes or discs" (Public Officers Law § 86 [4]).

57.     With limited exceptions, FOIL does not "require any entity to prepare any record not possessed or maintained by such entity." (Public Officers Law § 89[3][a]).

58.     Thus, until 2007, courts repeatedly held that agencies were not required to compile or reorganize information into new records that were not otherwise maintained during the course of their operations. (*See Matter of Gannett Co.* v. *County of Monroe*, 59 A.D.2d 309, 313, 399 N.Y.S.2d 534 [4th Dept. 2009]; *Matter of Gabriels* v. *Curiale*, 628 N.Y.S.2d 882 [3d Dept.

13

1995]; *Matter of White* v. *Regan*, 575 N.Y.S.2d 375 [3d Dept. 1991]; *Matter of Guerrier v. Hernandez–Cuebas*, 566 N.Y.S.2d 406 [3d Dept. 1991]; *Matter of Wattenmaker* v. *New York State Employees' Retirement Sys.*, 464 N.Y.S.2d 52 [3d Dept. 1983]; *Matter of Gannett Co.* v. *James*, 86 A.D.2d 744, 746, 447 N.Y.S.2d 781).

59.     "As agencies progressively moved to maintain more and more information in electronic formats, however, the line between locating and retrieving an electronic record and creating an entirely new record comprising information maintained by the agency became increasingly blurred." (*Weslowski* v. *Vanderhoef*, 951 N.Y.S.2d 538, 541 [2 Dept. 2012]).

60.     The Court of Appeals addressed the issue of electronic records in *Data Tree, LLC* v. *Romaine*, 9 N.Y.3d 454 (2007), which held that:

> Disclosure of records is not always necessarily made by the printing out of information on paper, but may require duplicating data to another storage medium, such as a compact disc. Thus, if the records are maintained electronically by an agency and are retrievable with reasonable effort, that agency is required to disclose the information. In such a situation, the agency is merely retrieving the electronic data that it has already compiled and copying it onto another electronic medium. On the other hand, if the agency does not maintain the records in a transferable electronic format, then the agency should not be required to create a new document to make its records transferable. A simple manipulation of the computer necessary to transfer existing records should not, if it does not involve significant time or expense, be treated as creation of a new document.

(*Data Tree, LLC* v. *Romaine*, 9 N.Y.3d 454, 464–65 [2007]).

61.     In *Data Tree, LLC,* the parties submitted evidence as to how the requested information was stored on the agency's computer system and what efforts would need to be undertaken in order to provide it to the requesting party. (*See id.* at 466). Considering the conflicting evidence, the Court ultimately concluded that there were "questions of fact ... as to whether disclosure may be

14

accomplished by merely retrieving information already maintained electronically by the [agency] or whether complying with [the FOIL] request would require creating a new record." (*id.*).

62.    In response to the *Data Tree, LLC* decision, the Legislature amended Public Officers Law. (*see* L. 2008, ch. 223, § 6). As relevant here, the Legislature added provisions which stated that "[w]hen an agency has the ability to retrieve or extract a record or data maintained in a computer storage system with reasonable effort, it shall be required to do so" (Public Officers Law § 89[3][a], as amended by L. 2008, ch. 223, § 6).

63.    "Any programming necessary to retrieve a record maintained in a computer storage system and to transfer that record to the medium requested by a person or to allow the transferred record to be read or printed shall not be deemed to be the preparation or creation of a new record." (*id.*).

64.    Because the amendments were made in response to the Court of Appeals holding that agencies must produce data stored in large databases, the 2008 amendments added language which prohibited an agency from denying a request because it was too voluminous or burdensome if the request could be satisfied by engaging an outside service. (*See* Public Officers Law § 89[3][a]). The statute permitted an agency to recover the costs of engaging an outside service as provided in section 87(1)(c) of the Public Officers Law. (*See* Public Officers Law § 89[3][a]).

65.    Public Officers Law § 87 sets limits on the costs an agency may charge those who have requested records: "fees for copies of records ... shall not exceed twenty-five cents per photocopy not in excess of nine inches by fourteen inches, or the actual cost of reproducing any other record" (Public Officers Law § 87[1][b][iii]). However, this only applies to paper records that must be photocopied because they are not maintained in electronic format. (*Id*; see also *Matter of Weslowski v Vanderhoef*, 98 AD3d 1123, 1129 [2d Dept 2012])

15

66.     Section 87(1)(c) of the Public Officers Law defines the term "actual cost." Under that

provision, an agency may only recover the "actual cost" of reproducing the record, including "an

amount equal to the hourly salary attributed to the lowest paid agency employee who has the

necessary skill required to prepare a copy of the requested record" (Public Officers Law §

87[1][c][i]).

67.     However, the statute provides that "preparing a copy shall not include search time or

administrative costs, and no fee shall be charged unless at least two hours of agency employee

time is needed to prepare a copy of the record requested" (Public Officers Law § 87[1][c][iv]).

68.     The Second Department has confirmed that "FOIL does not permit an agency to charge for

employee time spent searching for paper documents" (*Matter of Weslowski v Vanderhoef*, 98

AD3d 1123, 1130 [2d Dept 2012], citing Comm. on Open Govt. FOIL–AO–18127 [2010]).

69.     An agency may also recover "the actual cost of the storage devices or media provided to

the person making the request in complying with such request," (Public Officers Law §

87[1][c][ii]), and "the actual cost to the agency of engaging an outside professional service to

prepare a copy of a record, but only when an agency's information technology equipment is

inadequate to prepare a copy, if such service is used to prepare the copy." (Public Officers Law §

87[1][c][iii] ).

70.     Thus, the post *Data Tree, LLC* amendments were intended to permit an agency to recover

costs associated with "preparing" the types of electronic records under the Court of Appeals

broadened definition of the term in that case.

71.     Specifically, the only "preparation" charges that may properly be passed along to a

requester seeking electronic records are the costs associated with the time it takes the lowest paid

16

agency employee to complete the following tasks, and only if completion of the task takes more than two hours:

   a.  Retrieving records from an electronic storage system;

   b.  Any programming necessary to retrieve records from an electronic storage system;

   c.  Extracting or segregating data from an electronic database;

   d.  Any programming necessary to extract or segregate data from an electronic database;

   e.  Any programming necessary to transfer records from an electronic storage system to a device or medium to produce the records to the requestor; and

   f.  Any programming necessary to allow the transferred records to be copied, printed or read.

72.    This is clearly reflected in the revised statute, which states "(a)ny programming necessary to retrieve a record maintained in a computer storage system and to transfer that record to the medium requested by a person or to allow the transferred record to be read or printed shall not be deemed to be the preparation or creation of a new record." (POL § 89[3][a]).

73.    Thus, the revised statute clearly does not permit the charging of fees for retrieval and production of routine records, or for applying redactions to records, whether paper or electronic, as such tasks do not fall within the legislature's definition of tasks required to "prepare" records for production to the requester.

74.    The regulations and advisory opinions of the Committee on Open Government further clarify that any costs associated with employee time required to review records in the first instance

17

to determine if any portion is exempt, and redaction of any exempt portions, does not constitute "preparation" of the record for disclosure and may not be charged to the requestor.

75.     According to 21 NYCRR 1401.8(a), "[a]n agency shall not charge a fee for ... review of the content of requested records to determine the extent to which records must be disclosed or may be withheld."

76.     FOIL does not differentiate between records stored in paper form or those stored in electronic format. (Public Officers Law § 86 [4] [The term "[r]ecord" is defined to mean "any information kept, held, filed, produced or reproduced by, with or for an agency ... in any physical form whatsoever ... [including] papers [and] computer tapes or discs"]).

77.     Similarly, Public Officer's Law § 87(1)(c)(iv) does not permit an agency to charge a fee for the time required for an agency employee to apply redactions to electronic records such as the requested Body Worn Camera records in this case.

78.     The Committee on Open Government has repeatedly explained that agencies may not charge fees for employee time to redact records. (Comm. on Open Govt. FOIL–AO–19103 [2014] ["it is our opinion that an agency may charge for employee time spent extracting or segregating data from an electronic database, *but not for redacting from records already prepared or transferring the record to the requested medium*"]; Comm. on Open Govt. FOIL–AO–18127 [2010] ["no additional fee may be charged for employee time, for search, redactions, etc."]; Comm. on Open Govt. FOIL–AO–17734 [2009]).

79.     The Committee on Open Government further explained that, "electronically removing material from [an electronically stored] record[ ] is the same as blacking out sentences on a page prior to copying for release, an act which [FOIL] has consistently required the agency to perform at no cost to the applicant." (Comm. on Open Govt. FOIL–AO–19103 [2014]).

80.     Lastly, Respondent may not charge any fees associated with the retrieval, extraction or transfer of the requested Body Worn Camera records, because preparation of said record for transfer clearly does not require the use of any programming or manipulation of data, or even if it does, it clearly does not require more than two hours of an agency employee's time.

81.     Notably, where the Court in *Data Tree* refers to, "significant time or expense," it is referring specifically to retrieval and manipulation of electronic data in order to "transfer existing records" in response to a request—a.k.a. "preparing" the records by transferring them to a medium on which they could be provided to the requestor. (*Id.*).

82.     This is in stark contrast to the requested Body Worn Camera records, which are routinely disclosed by the Erie County District Attorneys' office to criminal defense attorneys in their original unredacted format in criminal prosecutions.

83.     Thus, the retrieval and transfer of Erie County Deputies' Body Worn Camera records clearly does not involve significant time or expense.

84.     Thus, all of the controlling and persuasive authority unequivocally demonstrates that the time required for an agency employee to retrieve and apply redactions to the portions hypothetically exempt, does not constitute "preparation" of the record for disclosure, and any the time associated with these tasks or any other tasks may not be passed onto the requester.

## POINT II
## PETITIONER IS ENTITLED TO ATTORNEYS' FEES AND COSTS

85.     Petitioners are entitled to costs and reasonable attorney's fees incurred in bringing this action because Respondent must produce records in response to Petitioners' request, and because the demand of payment before providing responsive records to the FOIL request was unreasonable.

86.     Petitioners are entitled to attorney's fees and costs because (1) Respondent must produce records in response to Petitioners' FOIL request, which they have not yet done, and so Petitioners should substantially prevail in this proceeding; (2) because Respondent's request for funds before providing responsive records sought in the FOIL request was unreasonable (3) because Respondent's demand for a payment as a condition to release the requested BWC footage and records was unreasonable as it lacked any legal basis.

87.     In 2017, Section 89(4) was amended to provide that the Court **must** award attorneys' fees to a Petitioner in an Article 78 proceeding related to a denial of access to records requested under FOIL, where the Petitioner substantially prevails in the proceeding, and the agency lacked a reasonable basis for denying access to the requested records. Section 89(4) also permits the Court to award attorneys' fees where the Petitioner substantially prevails in the proceeding and the agency failed to respond to the request or appeal within the statutory time.

88.     The legislature explained the reason they removed judicial discretion to award attorneys' fees in the enacting legislation:

> A judicial proceeding to challenge an agency's denial of disclosure is a costly endeavor in both time and money. The full proceeding can take several months from the time of filing to the exhaustion of all appeals.
>
> In addition, the cost of hiring an attorney can be significant depending on the length and scope of the proceedings. Often, people simply cannot afford to take a government agency to trial to exercise their right to access public information.
>
> This bill provides for an award of attorneys' fees to prevailing parties in order to encourage compliance with FOIL and to minimize the burdens of cost and time from bringing a judicial proceeding.

89.     The Petitioners herein are making an application for attorney's fees and costs associated with the Article 78 Petition and will submit an affirmation regarding the attorney's hourly rates

20

and number of hours spent if the Court finds that Petitioners are entitled to the award of attorney's fees and costs. Previously the Court had the discretion to award attorney's fees to a prevailing Petitioner when the agency lacked a reasonable basis for denying access to the requested records; now, however, the Court is required to award fees and costs where the Respondent lacked a reasonable basis for withholding the requested records.

90.    Here, Petitioners will substantially prevail if Respondent produces any records in response to the instant proceeding. As of the date this petition was filed, Respondent has not produced any records, and clearly, if Petitioners had not filed the instant Article 78 proceeding, Respondent would never have produced any records.

91.    Petitioners were forced to bring the within application as there in no other remedy, since Respondents have refused to produce the requested records until receipt of the "prepayment" amount identified in the invoice. (Exhibit "E")

92.    The legislative intent of the Freedom of Information Law is to maximize public access to government records. This principle is written into the language of the FOIL statute itself, which permits an agency to deny public access to "records or portions thereof." N.Y. Pub. Off. Law § 87(2) (emphasis added). The Court of Appeals has made clear that an agency cannot categorically withhold entire documents because they include exempt material but instead must disclose portions of documents after redacting those portions that are exempt when redaction will preserve the purpose of the exemption. Thus, Respondent clearly lacked any reasonable basis for their blanket denial of Petitioners' January 24, 2024 FOIL request.

93.    The Court in *Legal Aid Soc. v. N.Y. State Dep't of Corr. & Cmty. Supervision*, discussed the reason and application of the legal fee provision that was originally added to FOIL:

> As we have emphasized, the counsel fee provision was added in recognition that persons seeking to force an agency to respond to a

21

> proper FOIL request "must engage in costly litigation," and the
> statute was recently amended in order to create a clear deterrent to
> unreasonable delays and denials of access [and thereby] encourage
> every unit of government to make a good faith effort to comply with
> the requirements of FOIL. Mindful of this goal, petitioner, who
> doggedly pursued its request for more than a year and never received
> a responsive reply to that request or its appeals prior to the
> commencement of this proceeding, has been subjected to the very
> kinds of "unreasonable delays and denials of access" which the
> counsel fee provision seeks to deter. Under the circumstances, we
> find an award of counsel fees and costs to be warranted and remit
> the matter to Supreme Court to determine the reasonable amount
> thereof.

(*Id.* at 776 [internal quotations and citation omitted]).

94.     The 2017 amendment was further intended to deter the kind of unreasonable blanket

denials issued by Respondent in this matter.

95.     Lastly, even if the Respondent produces the requested records upon the commencement of

this Article 78 proceeding and without further judicial intervention, Petitioners are still entitled to

legal fees, as they will have substantially prevailed. (*New York State Defenders Ass'n* v. *New York*

*State Police*, 927 N.Y.S.2d 423 [3d Dept. 2011]; *McCrory* v. *Village of Mamaroneck*, 932

N.Y.S.2d 850 [Sup. Crt. Westchester Co. 2011]).

96.     The Petitioners request permission to submit a further affidavit for attorneys' fees and costs

associated with bringing this Article 78 Petition or for a hearing if the Court deems necessary, as

the total amount of attorneys' fees and costs associated with this litigation cannot be ascertained

until the conclusion and resolution of this matter.

97.     Thus, this Court should order Respondent to pay Petitioners' reasonable attorneys' fees

and costs incurred in bringing the within application.

### Conclusion

22

98.     Although compliance with the Freedom of Information Law involves the use of public employees' time, the Court of Appeals has found that the Law is not intended to be given effect "on a cost-accounting basis", but rather that "[m]eeting the public's legitimate right of access to information concerning government is fulfillment of a governmental obligation, not the gift of, or waste of, public funds" (*Doolan* v. *BOCES*, 48 NY 2d 341, 347 [1979]).

99.     Respondent has done exactly what the Court of Appeals has prohibited by charging an unlawful payment to allegedly cover the employee time required to "prepare" records.

100.    Thus, Petitioners respectfully submit that their instant petition should be granted in its entirety.

101.    No prior application has been made for the relief sought herein.

**WHEREFORE,** Petitioners pray that this Court issue an Order:

1.   Requiring Respondent to provide Petitioners with a complete, unredacted, copy of the records requested in his January 24, 2024 FOIL request pursuant to the Freedom of Information Law, ("FOIL"), N.Y. Public Officers Law ("POL") § 84 et seq., in their original file format; and

2.   Awarding attorney's fees and costs in favor of Petitioners against Respondent in an amount to be determined at the conclusion of this proceeding, pursuant to POL § 89(4)(c); and

3.   Granting Petitioners such other and further relief as this Court may deem just and proper.

Dated: New York, New York
       July 11, 2024

                                              *Elliot Shields*
                                              ELLIOT D. SHIELDS

## ATTORNEY'S VERIFICATION

**ELLIOT D. SHIELDS,** an attorney duly admitted to practice before the Courts of the State of New York, affirms the following to be true under the penalties of perjury:

I am associated with the law firm **ROTH & ROTH, LLP**, I have read the annexed **VERIFIED PETITION** and know the contents thereof, and the same are true to my knowledge, except those matters therein which are stated to be alleged upon information and belief, and as to those matters I believe them to be true. My belief, as to those matters therein not stated upon knowledge, is based upon facts, records, and other pertinent information contained in my files. The reason this verification is made by me and not Petitioner Terrance Cash is that Mr. Cash does not reside in the county wherein I maintain my office.

DATED: New York, New York
July 11, 2024

*Elliot Shields*

ELLIOT D. SHIELDS

# EXHIBIT A

# ROTH & ROTH, LLP

192 LEXINGTON AVENUE, SUITE 802, NEW YORK, NEW YORK 10016
ROTHANDROTHLAW.COM T: (212) 425-1020 F: (212) 532-3801

January 24, 2024

**VIA Email: psdfoils@erie.gov**
Erie County Sheriff's Office
Professional Standards Division
40 La Riviere Drive, Suite 140
Buffalo, NY 14202
ATTN: FOIL Officer

        Re:      ***FOIL Request***
                 **Terrance Cash, DOB 4/10/1999, Jail ICN# 146585**
        **DOI:**   **January 9, 2024.**

To Whom It May Concern:

        I am investigating an incident that occurred on or about January 9, 2024, wherein
Terrance Cash was allegedly injured by several Erie County Sheriff's Deputies while being
transported from the jail to Erie County Medical Center. Mr. Cash allegedly sustained
serious injuries including a broken jaw and broken teeth as a result of force used against
him by Sheriff's Deputies.

        I write this letter as a formal request for records maintained by the County of Erie
regarding Mr. Cash, without date limitation.

        Specifically, I write on behalf of Mr. Cash to request, pursuant to FOIL, that Erie
County Sheriff's Office produce (1) all video recordings of the incident on January 9, 2024,
including Body Worn Camera recordings, surveillance videos and any other videos; (2) all
paperwork mentioning or describing said video recordings; (3) all paperwork of Mr. Cash's
transfer between cells, and to and from Erie County Medical Center; and (4) all incident
reports and other paperwork documenting force used against Mr. Cash.

        Your prompt attention to this matter is appreciated.

                                        Very truly yours,

                                        ~//s//~
                                        Elliot Shields

# EXHIBIT B

**JOHN C. GARCIA**
SHERIFF

**WILLIAM J. COOLEY**
UNDERSHERIFF



**ADMINISTRATIVE OFFICES**
10 DELAWARE AVENUE
BUFFALO, NEW YORK 14202-3913
(716) 858-7618
FAX: (716)858-7882
WEBSITE: http://www.erie.gov/sheriff

## SHERIFF OF ERIE COUNTY

2/9/2024

Roth & Roth, LLP
192 Lexington Avenue, Suite 802
New York, New York 10016

Elliot Shields,

FOIL REFERENCE # 24-006998
RE: Terrance Cash

Your FOIL(s) request dated 1/24/2024 has been received and reviewed.

In response to your inquiry, we are unable to complete your request at this time due to the following reason(s).

> *The record(s) you requested currently interfere with law enforcement investigations or judicial proceedings pursuant to §87(2)(e)(i) of the Public Officers Law.*

If you wish to appeal this denial, you have 30 days from the receipt of access to records or portions thereof. Please contact the Appeals Officer, Chief Daniel Grasso by either postal mail to 134 West Eagle Street, 4th Floor, Civil Division, Buffalo, NY 14202 or you can email your FOIL appeal request to ECSOfoilappeals@erie.gov.

For more information, review NYS Public Officers Law §87; Access to Agency Records or NYS Public Officers Law §89. General provisions relating to access to records; certain cases.

Best Regards,

Chief Neil C. Held
Professional Standards Division
40 La Riviere Drive, Suite 140
Buffalo, NY 14202



SHERIFF OF ERIE COUNTY
**JOHN C. GARCIA**
SHERIFF
Professional Standards Division
40 La Riviere, Suite 140
Buffalo, NY 14202-3913



Roth & Roth, LLP
192 Lexington Avenue, Suite 802
New York, New York 10016
ATTN: Elliot Shields

1001E86912 C073

INDEX NO. 806247/2025

Case 1:25-cv-00441-MAV    Document 1-2    Filed 05/22/25    Page 42 of 70

RECEIVED NYSCEF: 05/21/2025

# EXHIBIT C

Case 1:25-cv-00441-MAV     Document 1-2     Filed 05/22/25     Page 43 of 70

# ROTH & ROTH, LLP

192 LEXINGTON AVENUE, SUITE 802, NEW YORK, NEW YORK 10016
ROTHANDROTHLAW.COM T: (212) 425-1020 F: (212) 532-3801

February 19, 2024

**Via Email: ECSOfoilappeals@erie.gov**
**Chief Daniel Grasso**
**FOIL Appeals Officer**
134 West Eagle Street, 4th Floor
Civil Division
Buffalo, NY 14202

### Re.: Appeal of denial of FOIL No.: 24-006998

Dear Mr. Grasso,

I write to appeal the denial of my FOIL request that was served via email on
the County of Ontario on January 24, 2024. (FOIL request annexed hereto as
Exhibit "A").

By letter dated February 9, 2024, the Erie County Sheriff denied the request
on the alleged basis that "currently interfere with law enforcement investigations or
judicial proceedings pursuant to § 87(2)(e)(i) of the Public Officers Law." (denial
letter annexed hereto as Exhibit "B").

Please be advised that the County has not and cannot meet its burden under
POL 87(2)(e)(i) to demonstrate that disclosure of the requested records would
somehow interfere with ongoing judicial proceedings. It is impossible that release of
any of the requested video footage or other records could somehow "interfere with"
the prosecution, because the prosecutor would have the absolute obligation under
New York law to disclose the videos and other records to the defendant pursuant to
*People* v. *Rosario*, 9 N.Y.2d 286 (1961)(prosecution required to disclose to the
defense all recorded statements of prosecution witnesses), and if the video and other
records are favorable to the defense, it would have to be disclosed pursuant to
*People* v. *Vilardi*, 76 N.Y.2d 67 (1990) and *Brady* v. *Maryland*, 373 U.S. 83 (1963).

The County cannot simply assert that disclosure would interfere with the
ongoing prosecution. Instead, the County must articulate facts that demonstrate

specifically how disclosure of the requested records would interfere with the prosecution to assert the exemption under § 87(2)(e)(i).

Please be advised that in a recent Article 78 litigation where the City of Rochester denied access to records on the alleged basis that doing so would interfere with an ongoing prosecution, the Court rejected the City's claim as unreasonable and awarded my law firm $10,000 in attorney's fees. (*See Roth & Roth LLP and Charles Dempsey* v. *City of Rochester and Rochester Police Department*, Index No. E2019001998; fee order annexed hereto as Exhibit "C").

Please respond within ten business days, as required by FOIL. If the records are denied on appeal, please explain the reasons for the denial fully in writing as required by law. In addition, please be advised that the Freedom of Information Law directs that all appeals and the determinations that follow be sent to the Committee on Open Government, Department of State, Once Commerce Plaza, 99 Washington Avenue, Albany, New York 12231.

Thank you for your prompt attention to this matter.

Yours truly,

*Elliot Shields*

Elliot Shields, Esq.

Enclosures.

# EXHIBIT D

FILED: ERIE COUNTY CLERK 05/21/2025 01:19 PM
NYSCEF DOC. NO. 4    Case 1:25-cv-00441-MAV    Document 1-2    Filed 05/22/25    Page 46 of 70

INDEX NO. 806247/2025
RECEIVED NYSCEF: 05/21/2025

## 24-006998 FOIL APPEAL

### DECISION

On or around January 24, 2024 the Law Offices of Roth and Roth, through attorney Elliot Shields, submitted a FOIL request to the Erie County Sheriff's Office regarding Terrance Cash. Four (4) numbered types/categories of documents/records were requested involving Mr. Cash and events that allegedly transpired on or around January 9, 2024.

On or around February 9, 2024 the Records Officer for the Erie County Sheriff's Office denied the present FOIL request pursuant to Public Officers Law 87(2) e (i).

On or around February 19, 2024 requestor filed this Appeal.

This Appeals Officer reviewed the FOIL request, denial and appeal. Upon information and belief, the Erie County Sheriff's Office is conducting an internal investigation into the alleged incident. There is no litigation, Criminal, Civil or otherwise, which by the release of the requested information would interfere with law enforcement investigations or judicial proceedings. In researching the pertinent issue the precedent case Lewis vs. Giuliani states: "all records are to be made available for public inspection and copying except 'in eight, narrowly constructed instances, where the governmental agency convincingly demonstrates it's need to withhold the requested material...The agency's asserted justification must be supported by some 'factual basis'" in the Court's discussion specifically concerning 87(2)e(i) stating: "In order to invoke the Law Enforcement exemption for causes in which no other law enforcement investigation or judicial proceeding is yet pending, respondents must make such a factual showing, or no exemption is warranted."

After review, research and due deliberation it is the decision of this Officer that the Appeal is **GRANTED**. Therefore, the Records Officer is directed to provide, within a reasonable time and cost pursuant to Public Officers Law 87, the information, in the Erie County Sheriff's Office control, as requested in the present FOIL request.

Dated:

March 12, 2024.

Chief Daniel P. Grasso

FOIL Appeals Officer

# EXHIBIT E

 **Erie County Sheriff's Office**

# Invoice

Professional Standards Division
40 La Riviere Drive, Suite 140
Buffalo, NY 14202

Date: 3/27/2024

Phone: (716) 858-8088
To:

For:

Roth & Roth, LLP
192 Lexington Avenue, Suite 802
New York, New York 10016
ATTN: Elliot Shields

FOIL request for documents and other information
regarding a Terrance Cash

| DESCRIPTION | ITEMS | RATE | AMOUNT |
|---|---|---|---|
| Police incident reports | 2 | $15.00 | $ 30.00 |
| Thumb drive with body camera footage | 1 | $18.00 | $ 18.00 |
| Other Documentation | 38 | $ 9.50 | $ 9.50 |
| *Hourly Rate to prepare request | 6 | $25.00 | $150.00 |

*In determining the actual cost of reproducing a record, an
agency may include (Per New York State Public Officers
Law Section §87 (b) (i)) an agency amount equal to the
hourly salary attributed to the lowest paid agency employee
who has the necessary skill required to prepare a copy of the
requested record. Per Teamsters Local 264 contract this is
based on a paid grade 6 with 5 years of experience with the
agency.

| | | TOTAL | $207.50 |
|---|---|---|---|

Erie County Sheriff's Office

# EXHIBIT F

AD

Add to cart

AD

AD

Trial Gui
Trial Guides



THE PEOPLE'S STATION



LISTEN
Power 93.7

BEST HALLOWEEN P
WESTERN NEW YORK

SHARE ON FACEBOOK          SHARE ON TWITTER

Lately, there has been a lot of news about police agencies and their use of cameras in various capacities.

From various departments like the Buffalo Police, Cheektowaga Police, and Lancaster Police using stationary license plate cameras to track people as they drive around the region to the Hamburg Police Department's lack of cameras, departments keeping track of things using video is becoming more prevalent daily.

READ MORE: Retired Police Officer Indicted For Shooting Teenager In Buffalo

The Erie County Sheriff's Office, which issues body cameras to patrol deputies, is now taking steps to issue cameras to deputies assigned to the Erie County Holding Center in downtown Buffalo and the Erie County Correctional Facility in Alden, New York.

The ECSO is responsible for more than 1,500 inmates on any given day between the two facilities.

**READ MORE:** Buffalo 12-Year-Old Missing For Years Found Dead

According to WGRZ-TV, around 300 cameras are being deployed to deputies and corrections officers who work in the two facilities.

 **Erie County Sheriff's Office**
February 28 · ⊘                                                    ⊕

SHERIFF JOHN C. GARCIA
UNDERSHERIFF WILLIAM J. COOLEY

ROLL OUT OF BODY-WORN CAMERAS COMPLETE AT ERIE
COUNTY JAILS

BUFFALO/ALDEN, N.Y. – Erie County Sheriff John C. Garcia reports
the completion of Body-Worn Camera (BWC) deployment at the Erie
County Holding Center in Buffalo. This means the roll out is now
complete at both jails operated by the Erie County Sheriff's Office.

In all, 175 BWCs have been deployed at the Holding Center. There
are 122 BWCs already in operation at the Erie County Correctional
Facility in Alden. Any corrections officer or deputy in a housing unit
or post where they interact with an incarcerated individual or
member of the public will be equipped with a BWC.

"I would like to thank members of the Legislature for their advocacy
of this program," Sheriff Garcia said. "Our Jail Management Division
also appreciates the collaborative efforts of labor at each facility to
roll out body-worn cameras."

"Throughout my tenure as Chair of the Legislature I have fought
tirelessly for body cameras and improved transparency within our
county jail system," said Erie County Legislature Chairwoman April
Baskin. "I am proud to hear that body cameras have been fully
deployed in both of our county jails. The body camera system will
help protect the safety of deputies and detainees."

"I'm happy to hear that the Sheriff's Office has fully deployed body
cameras in the two jails," said Public Safety Committee Chairman
Howard Johnson. "Transparency is a key aspect of making sure
incarcerated individuals and deputies alike remain safe, and I thank
Sheriff Garcia and everyone involved in deploying these cameras.
This is a new day in Erie County."

"By having Erie County Corrections Officers and Sheriff's Deputies
wear body cameras, any alleged altercation in the jails will be
recorded." said Minority Leader John Mills. "This measure will
protect both the officers and the incarcerated and is a positive step
towards ensuring the safety of all involved."

"I'm pleased that Erie County Sheriff's Deputies and Corrections
Officers working in the jails will now be equipped with body
cameras," said Legislator Frank Todaro. "This will help to properly
ensure alleged incidents in the jails are recorded and allow for
proper documentation of any disturbance."



Officials from the Erie County Legislature is applauding this move by the Sheriff's Office as a key step towards transparency in the county. This is something that elected officials on the city and county level have been asking for, especially in light of the fact that Erie County taxpayers are now on the hook for a more than $90 million judgment award to the family of a man who, according to the jury, died at the hands of the Erie County Sheriff's Office.

Hopefully, these cameras will improve conditions in the two Erie County jails.

## 11 NEW YORK CITIES WITH THE MOST VIOLENT GUN CRIMES

*Gallery Credit: Yasmin Young*



By Google Maps

**11. Westchester County/Yonkers (Population 963,247) Violent Crimes - 1,585, Violent Crimes with Gun - 229**

# EXHIBIT G

Case 1:25-cv-00441-MAV     Document 1-2     Filed 05/22/25     Page 55 of 70

Exhibit G......February 28, 2024 WIVBTV video link wherein Erie County Sheriff John Garcia

discusses body camera's in holding centers: https://www.youtube.com/watch?v=TCu1bb8FBlY

# EXHIBIT H

77°

BUFFALO  >  I JULY 10, 2024

PUBLIC SAFETY

## Hundreds of body cameras coming to Erie County Holding Centers

BY BRIANNE ROESSER I BUFFALO
UPDATED 5:12 PM ET FEB. 29, 2024

ERIE COUNTY, N.Y. — Erie County Sheriff John Garcia said 200 body-worn cameras are coming to the Erie County Holding Centers in Buffalo and Alden.

"There's no substitute for the integrity of law enforcement," Garcia said. "We take an oath to protect, serve. It's about honor and duty. However, this is another investigative tool that's going to allow us to, you know, have that transparency."

The $350,000 investment was approved unanimously by the Erie County Legislature. Much of the cost, Garcia said, is the storing the data.

77°

Garcia said he hopes it will save taxpayers in the long run.

"What a body camera shows, it could, you know, derail an unjustified complaint that leads to a lawsuit that taxpayers then have to foot a huge bill for," Garcia said. "It's about accountability, it's about transparency, and yes, it's about making that initial investment today that's going to pay off greatly as the years go on."

**YOU MAY ALSO BE INTERESTED IN**



WEATHER

## Live updates: Beryl impacts on Western New York

WESTERN NEW YORK I 14 MINUTES AGO

**77°**

BUFFALO  >  | JULY 10, 2024



WEATHER

## Be weather aware today as severe storms hit Western New York

BUFFALO | 1 HOUR AGO



WEATHER

## Photo Gallery: Beryl's impacts across the Caribbean, Mexico and U.S.

NATIONWIDE | 2 HOURS AGO

77°

BUFFALO > | JULY 10, 2024



PUBLIC SAFETY

## 1 person dead following incident involving Buffalo Police

CITY OF BUFFALO | 3 HOURS AGO



POLITICS

## Bill decriminalizing adultery awaits Gov. Hochul's signature

BUFFALO | 17 HOURS AGO

77°

BUFFALO  >  |  JULY 10, 2024



POLITICS

## Addiction services leaders ask N.Y. governor, comptroller to open naloxone bid process

BUFFALO | 17 HOURS AGO

**SPECTRUM NEWS**

**CONTACT**

**ABOUT**

**RSS**

**SITEMAP**

**FAQ**

**ADVERTISE WITH US**

**CAREERS**

**TERMS**

**YOUR PRIVACY RIGHTS**

77°

BUFFALO > | JULY 10, 2024

**CERTIFICATIONS**

© 2024, Charter Communications, all rights reserved.

# EXHIBIT I

# SUPREME COURT OF THE STATE OF NEW YORK
## Appellate Division, Fourth Judicial Department

**179**
**CA 19-01259**
PRESENT: SMITH, J.P., LINDLEY, NEMOYER, TROUTMAN, AND DEJOSEPH, JJ.

IN THE MATTER OF THEODORE FORSYTH,
PETITIONER-APPELLANT,

                    V                          MEMORANDUM AND ORDER

CITY OF ROCHESTER AND ROCHESTER POLICE
DEPARTMENT, RESPONDENTS-RESPONDENTS.
(APPEAL NO. 1.)

ROTH & ROTH LLP, NEW YORK CITY (ELLIOT SHIELDS OF COUNSEL), FOR
PETITIONER-APPELLANT.

TIMOTHY R. CURTIN, CORPORATION COUNSEL, ROCHESTER (STEPHANIE A. PRINCE
OF COUNSEL), FOR RESPONDENTS-RESPONDENTS.

---

Appeal from a judgment (denominated order) of the Supreme Court,
Monroe County (Ann Marie Taddeo, J.), entered December 18, 2018 in a
proceeding pursuant to CPLR article 78. The judgment, among other
things, remitted the matter back to respondents for reconsideration of
petitioner's Freedom of Information Law Request.

It is hereby ORDERED that the judgment so appealed from is
unanimously modified on the law by vacating that part of the judgment
permitting respondents to charge petitioner a fee for the cost of
reviewing and redacting the requested video footage, and as modified
the judgment is affirmed without costs.

Memorandum: Petitioner commenced this CPLR article 78 proceeding
seeking, inter alia, to compel respondents to comply with his request
pursuant to the Freedom of Information Law ([FOIL] Public Officers Law
art 6) for certain video footage recorded by respondent Rochester
Police Department as part of its Body-Worn Camera (BWC) program. In
appeal No. 1, petitioner appeals from a judgment in which Supreme
Court concluded that Public Officers Law § 87 did not permit
respondents to meet their FOIL obligations by providing a "blanket-
blurred" video to petitioner; determined that respondents could charge
a fee "directly related to the redaction of electronic records,"
provided the fee was not onerous; and remitted the matter to
respondents for reconsideration, directing respondents to provide a
privilege log to petitioner detailing which sections of the video must
be redacted and the reason for such redaction. In appeal No. 2,
petitioner appeals, as limited by his brief, from an order denying his
application, filed within two months of the judgment, seeking, inter
alia, to hold respondents in contempt for their failure to comply with

CA 19-01259

the judgment in appeal No. 1.

With respect to appeal No. 1, we agree with petitioner that respondents may not charge petitioner a fee for the costs associated with their review or redaction of the BWC footage requested by petitioner (*see Matter of Time Warner Cable News NY1 v New York City Police Dept.*, 53 Misc 3d 657, 678 [Sup Ct, NY County 2016]). We note that the Committee on Open Government has specifically opined that "if the document exists in electronic format and the agency has the authority and the ability to redact electronically, we believe it would be reasonable for the agency to provide the requested redacted copy at no charge" (Comm on Open Govt FOIL-AO-18904 [2012]). While "the advisory opinions issued by the Committee on Open Government are not binding on the courts . . . , an agency's interpretation of the statutes it administers generally should be upheld if not unreasonable or irrational" (*Matter of Weslowski v Vanderhoef*, 98 AD3d 1123, 1130 [2d Dept 2012], *lv dismissed* 20 NY3d 995 [2013] [internal quotation marks omitted]). We therefore modify the judgment by vacating that part of the judgment permitting respondents to charge petitioner a fee for the cost of reviewing and redacting the requested video footage.

Contrary to petitioner's further contention in appeal No. 1, the court did not err in remitting the matter to respondents to reconsider the request, provide a privilege log, and ultimately comply with its statutory obligations (*see Matter of Konigsberg v Coughlin*, 68 NY2d 245, 251 [1986]; *Matter of Rhino Assets, LLC v New York City Dept. for Aging, SCRIE Programs*, 31 AD3d 292, 294 [1st Dept 2006]). In view of the foregoing, petitioner's remaining contentions in appeal No. 1, including whether he is entitled to attorney's fees, are premature at this juncture.

With respect to appeal No. 2, we reject petitioner's contention that the court erred in denying that part of his application seeking a finding of contempt based on respondents' failure to comply with the judgment in appeal No. 1. " 'In order to prevail on a motion to punish a party for civil contempt, the movant must demonstrate that the party charged with contempt violated a clear and unequivocal mandate of the court, thereby prejudicing the movant's rights . . . The movant has the burden of proving contempt by clear and convincing evidence' " (*Belkhir v Amrane-Belkhir*, 128 AD3d 1382, 1382 [4th Dept 2015]). Here, petitioner failed to establish that the judgment in appeal No. 1 expressed an unequivocal mandate inasmuch as no deadline was contained therein (*see id.* at 1382; *cf. Matter of North Tonawanda First v City of N. Tonawanda*, 94 AD3d 1537, 1538 [4th Dept 2012]).

Entered:  July 24, 2020                           Mark W. Bennett
                                                  Clerk of the Court

Case 1:25-cv-00441-MAV    Document 1-2    Filed 05/22/25    Page 66 of 70

# EXHIBIT J

## SUPREME COURT OF THE STATE OF NEW YORK
### *Appellate Division, Fourth Judicial Department*

**540**

**CA 21-01456**

PRESENT: PERADOTTO, J.P., LINDLEY, NEMOYER, CURRAN, AND WINSLOW, JJ.

IN THE MATTER OF THEODORE FORSYTH,
PETITIONER-RESPONDENT,

                    V                          MEMORANDUM AND ORDER

CITY OF ROCHESTER AND ROCHESTER POLICE
DEPARTMENT, RESPONDENTS-APPELLANTS.

PATRICK BEATH, DEPUTY CORPORATION COUNSEL, ROCHESTER (STEPHANIE A.
PRINCE OF COUNSEL), FOR RESPONDENTS-APPELLANTS.

ROTH & ROTH, LLP, NEW YORK CITY (ELLIOT D. SHIELDS OF COUNSEL), FOR
PETITIONER-RESPONDENT.

---

Appeal from a judgment (denominated order) of the Supreme Court,
Monroe County (Ann Marie Taddeo, J.), entered March 18, 2021 in a
proceeding pursuant to CPLR article 78. The judgment granted
petitioner's motion for leave to renew his request for attorney's fees
and costs and, upon renewal, granted petitioner's request for
attorney's fees and costs.

It is hereby ORDERED that the order so appealed from is
unanimously affirmed without costs.

Memorandum: Petitioner made a request pursuant to the Freedom of
Information Law ([FOIL] Public Officers Law art 6) for certain video
footage recorded by respondent Rochester Police Department (RPD) as
part of its Body-Worn Camera (BWC) program. Respondents responded by
providing petitioner, pursuant to their policy, access to a video
consisting of fully blurred images with the audio removed.
Respondents noted in their response that, if a less redacted copy was
requested, the cost would need to be estimated by the BWC unit of RPD
and such fees would need to be paid in advance to obtain the more
precisely redacted video.

Petitioner pursued an administrative appeal of respondents' FOIL
response, which petitioner considered a constructive denial of his
request given respondents' blanket redaction of the entire video
without any specific and particularized justification. Respondents
responded to petitioner's administrative appeal by stating that
petitioner had been provided with a copy of the video that included
respondents' "standard blurring filter and audio redaction."
Respondents criticized petitioner for pursuing an administrative
appeal without first requesting an estimate, despite the language in

FILED: ERIE COUNTY CLERK 05/21/2025 01:19 PM  INDEX NO. 806247/2025
NYSCEF DOC. NO. 4   Case 1:25-cv-00441-MAV   Document 1-2   Filed 05/22/25   Page 68 of 70
RECEIVED NYSCEF: 05/21/2025

-2-

CA 21-01456

the response stating that petitioner had to request an estimate for the cost of more precise blurring if he was unsatisfied. While respondents considered petitioner's administrative appeal "premature" because "nothing ha[d] been denied" given that respondents had "provided the full video with the standard blanket redactions with additional instructions as to next steps," they nonetheless proceeded to render a determination on the administrative appeal. Respondents further stated that, although petitioner had requested on administrative appeal that respondents release an unredacted version of the video, petitioner was entitled only to the video with redactions applied pursuant to the Public Officers Law. However, due to the specialized skill required to perform such redactions, prepayment for preparation of the video was required before it could be processed. Based on the estimated amount of work needed to fulfill the request, respondents informed petitioner that prepayment in the amount of nearly $300 would be required in advance of the redaction process.

Petitioner thereafter commenced this CPLR article 78 proceeding seeking to compel respondents to comply with his FOIL request by providing a complete, unredacted video except for any parts that fell within an exemption to disclosure under the law and to recover attorney's fees and costs pursuant to Public Officers Law § 89 (4) (c). Supreme Court concluded that Public Officers Law § 87 did not permit respondents to meet their FOIL obligations by providing a "blanket-blurred" video to petitioner; determined that respondents could charge a fee "directly related to the redaction of electronic records," provided the fee was not onerous; and remitted the matter to respondents for reconsideration, directing respondents to provide a privilege log to petitioner detailing which sections of the video must be redacted and the reason for such redaction.

Petitioner thereafter filed a notice of appeal and, following additional communication requesting that respondents comply with the order, petitioner moved for an order of civil contempt. Respondents, in an effort to resolve the contempt motion, wrote to petitioner's counsel enclosing a redaction log that provided numerous redactions for content such as faces of minors, names, addresses, and dates of birth. The court ultimately denied the motion, and petitioner appealed from the order denying the contempt motion as well.

On appeal, we agreed with petitioner that respondents may not charge petitioner a fee for the costs associated with their review or redaction of the BWC footage requested by petitioner (*Matter of Forsyth v City of Rochester*, 185 AD3d 1499, 1500 [4th Dept 2020]; *see* Comm on Open Govt FOIL-AO-18904 [2012]). We nonetheless rejected petitioner's further contention that the court should have decided his entitlement to the video footage without allowing respondents to reconsider the request, provide a privilege log, and ultimately comply with their statutory obligations, and we therefore concluded that petitioner's request for attorney's fees was premature at that juncture (*Forsyth*, 185 AD3d at 1500-1501). We also concluded that the court properly denied petitioner's contempt motion (*id.* at 1501).

CA 21-01456

Immediately following our decision in the prior appeals, petitioner's counsel emailed respondents' counsel requesting that respondents produce an unredacted video and, after respondents' counsel failed to respond, petitioner's counsel sent another email. Respondents eventually released the BWC footage to petitioner along with a redaction log. Respondents explained that the redactions, pursuant to Public Officers Law § 87 (2) (b), were limited to personal information only, e.g., dates of birth and residential addresses. Respondents dropped their claim that the personal privacy exemption required the redaction of names and faces of minors, and therefore produced the footage without such redactions.

Petitioner then renewed his request to recover attorney's fees and costs, and the court determined that respondents lacked a reasonable basis to deny petitioner's original FOIL request, that petitioner substantially prevailed in the proceedings, and that petitioner was therefore entitled to reasonable attorney's fees and costs pursuant to Public Officers Law § 89. Respondents appeal, and we now affirm.

As relevant to the issues on appeal, the statute provides that, in a CPLR article 78 proceeding reviewing the denial of a FOIL request, the court must assess against the agency involved the requesting party's reasonable attorney's fees and other litigation costs when the requesting party "has substantially prevailed and the court finds that the agency had no reasonable basis for denying access" (Public Officers Law § 89 [4] [c] [ii]).

Respondents contend that they never denied petitioner's FOIL request within the meaning of the statute because, in response to their release of a completely redacted and soundless video pursuant to their policy, petitioner failed to submit prepayment in compliance with the policy and instead commenced the instant proceeding. That contention is devoid of merit because the record establishes that respondents did, in fact, deny petitioner's FOIL request. Instead of providing a copy of the requested BWC footage, respondents—pursuant to a blanket redaction policy that did not involve an evaluation of whether any particular footage was exempt from disclosure—released to petitioner a completely blurred, entirely soundless video. Then, on administrative appeal, respondents refused petitioner's request to release all of the video and instead conditioned the release of a less redacted video with audio on prepayment of nearly $300. Those actions constituted a blanket denial of petitioner's request (see Matter of Bottom v Fischer, 129 AD3d 1604, 1604-1605 [4th Dept 2015]). Indeed, respondents acknowledged that their response to petitioner's request was pursuant to a policy of providing "a blanket redacted video to all requestors in the first instance" without determining whether such full nondisclosure of the images and audio was warranted under the law. That was an improper denial inasmuch as "blanket exemptions for particular types of [media] are inimical to FOIL's policy of open government" (Matter of Gould v New York City Police Dept., 89 NY2d 267, 275 [1996]).

Next, respondents do not dispute on appeal that petitioner

CA 21-01456

"substantially prevailed when respondents, during the pendency of this proceeding, disclosed the records sought in the FOIL request" (*Matter of Dioso Faustino Freedom of Info. Law Request v City of New York*, 191 AD3d 504, 504 [1st Dept 2021]; *see* Public Officers Law § 89 [4] [c] [ii]). Instead, respondents contend that they had a reasonable basis for denying petitioner's FOIL request pursuant to their prepayment redaction policy. We reject that contention.

Here, respondents "had no reasonable basis for [their] blanket denial of petitioner's request" as a matter of course without first reviewing the video to determine whether any information fell within a statutory exemption to disclosure (*Bottom*, 129 AD3d at 1605). "[A]n agency responding to a demand under [FOIL] may not withhold a record solely because some of the information in that record may be exempt from disclosure" (*Matter of Schenectady County Socy. for the Prevention of Cruelty to Animals, Inc. v Mills*, 18 NY3d 42, 45 [2011]). "Instead, to invoke one of the exemptions of section 87 (2), the agency must articulate 'particularized and specific justification' for not disclosing requested [records]" (*Gould*, 89 NY2d at 275, quoting *Matter of Fink v Lefkowitz*, 47 NY2d 567, 571 [1979]), and respondents failed to do so. Moreover, even if respondents had a reasonable basis for their prepayment redaction policy generally (*cf.* Comm on Open Govt FOIL-AO-18904 [2012]), the record establishes that they had no reasonable basis for applying that policy to petitioner's FOIL request. Respondents' contention that they had a reasonable basis for denying all access to a video without redaction absent prepayment of redaction costs is belied by their release of a largely unredacted video after the courts ordered them to reconsider the FOIL request and justify their nondisclosure (*see Bottom*, 129 AD3d at 1605). Indeed, respondents abandoned their claims that the personal privacy exemption required the redaction of faces and names. In the end, the only audio content requiring redaction related to addresses and dates of birth, and the only visual content requiring redaction related to brief depictions of driver's licenses and a patrol car monitor. The record thus establishes that, had respondents simply reviewed the BWC footage in the first instance for statutorily authorized redactions instead of denying petitioner's request by releasing a completely blurred and soundless video, respondents could have produced a video with minimal authorized redactions that fulfilled their statutory obligations and petitioner's FOIL request.

Based on the foregoing, we conclude that petitioner "has been subjected to the very kinds of unreasonable delays and denials of access which the counsel fee provision seeks to deter" (*Bottom*, 129 AD3d at 1605-1606 [internal quotation marks omitted]), and that the court properly ordered that petitioner is entitled to reasonable attorney's fees and other litigation costs.

Entered:  July 8, 2022

Ann Dillon Flynn
Clerk of the Court